1
2
3
4                          **UNITED STATES DISTRICT COURT**

5                                 **DISTRICT OF NEVADA**

6
7
8    ROBERT HAYS,

9              Petitioner,                           3:04-cv-0011-RLH-VPC

10   vs.
                                                              **ORDER**
11   CRAIG FARWELL, *et al.*,

12   _____Respondents.

13   _____

14             This is an action on a petition for writ of habeas corpus brought by Robert A. Hays, a

15   Nevada prisoner.  The matter is before the court on respondents' Answer (docket #48) and Hays's

16   Reply (docket #56).  In addition, the court conducted an evidentiary hearing commencing on October

17   19, 2006, and concluding on March 6, 2007.  Having considered the arguments and evidence

18   presented and in full consideration of the applicable law, the court finds in favor of the Hays and

19   orders him immediate released from custody.

20        I.     Background

21             The procedural history was set out in detail in this court's order addressing

22   respondents' most recent motion to dismiss.  It will not be repeated here.  However, relevant to the

23   discussion and decision set out below is some factual background.  The factual background is

24   derived from the records of the state court proceedings, from testimony offered at the evidentiary

25   hearing conducted by this court, and from other documents contained in the expanded record,

26

including police reports, juvenile court proceeding transcripts, affidavits of interested parties, and reports by social workers and other state agents.

Hays was convicted following a jury trial on four counts of Sexual Assault of a Minor Under the Age of Fourteen Years and four counts of Lewdness with a Minor on charges that he sexually abused his then eight-year old daughter, Jennifer.

Hays moved to Las Vegas, Nevada from Brooklyn New York in August of 1991 with his wife, Karen, and five young children.  Jennifer is the oldest of those children.  Hays worked the graveyard shift as a security guard at a casino in a nearby community.  After some time, Karen obtained employment at another casino in the same community.  She worked the afternoon shift.

Karen became pregnant with Jennifer when she was 18 years old and she and Robert had three children before they married.  Robert and Karen Hays did not have a happy marriage.  In fact, at the time of Hays' criminal trial, Karen was involved with another man and was pregnant with his child.[1]  Since the time that the Hays children were removed from their home and placed in the custody of child protective services, in 1992, Karen has seen them fewer than three times.  She visited them only once while they were at Child Haven, testifying that it was simply too much trouble to visit the children under the conditions set by Social Services.  She saw Jennifer once outside the courthouse during Hays's trial.  According to her own testimony, Karen never sent birthday or holiday gifts or cards and was unaware of their accomplishments or present life status.

The evidence before this court strongly suggests that Karen was an abusive and neglectful mother, who slept late in the mornings and expected Jennifer to fill the role of care-giver and homemaker for the younger children.  Karen was verbally and physically abusive to Jennifer and, to a lesser extent, to the younger children.  She told Jennifer on more than one occasion that she

---

[1]At the present time, Karen is remarried and has a second family.   She is known as Karen Stewman.

2

1  wished Jennifer had never been born.  She frequently shouted at the children and threw objects at

2  them when she was angered.  She also struck or spanked them frequently.

3           Hays's parents, Virginia and Anthony Russo lived in the Las Vegas area and

4  frequently took care of the children.  Mrs. Russo would often go to the Hays home to help Jennifer

5  clean it.  Hays, himself was apparently not physically or verbally abusive to the children, but he was

6  unable, or unwilling to stop his wife's actions.  Jennifer testified that Hays was rarely around when

7  the abuse occurred.

8           The evidence presented in these proceedings also strongly indicates that Karen Hays

9  wanted desperately to be released from the responsibility for her five young children and from her

10 marriage.   In order to be free of them all, Karen set in motion a most insidious plan to break the

11 bonds that held her.  Karen schooled and coached eight-year old Jennifer about adult sexual behavior

12 and then threatened and coerced her into making accusations of sexual abuse against her father.

13       II.    Legal Standard

14          In most circumstances, 28 U.S.C. §2254(d), a provision of the Antiterrorism and

15 Effective Death Penalty Act (AEDPA), provides the legal standards for this Court's consideration of

16 a petition for writ of habeas corpus by a prisoner is state custody.  That standard is as follows:

17          An application for a writ of habeas corpus on behalf of a
            person in custody pursuant to the judgment of a State court shall not be
18          granted with respect to any claim that was adjudicated on the merits in
            State court proceedings unless the adjudication of the claim --
19
            (1)    resulted in a decision that was contrary to, or involved
20          an unreasonable application of, clearly established Federal law, as
            determined by the Supreme Court of the United States; or
21
            (2)    resulted in a decision that was based on an
22          unreasonable determination of the facts in light of the evidence
            presented in the State court proceeding.
23
   28 U.S.C. §2254(d).  These standards of review "reflect the ... general requirement that federal courts
24
   not disturb state court determinations unless the state court has failed to follow the law as explicated
25
   by the Supreme Court." *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999).
26

                                                    3

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. §2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. §2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (*quoting Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1).

Certain additional legal considerations may come into play in establishing a petitioner's entitlement to habeas corpus relief. Where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default. *Murray v. Carrier,* 477 U.S. 478, 496 (1986). If a petitioner presents reliable evidence that he is actually innocent - something

4

1   beyond what he showed to the jury that convicted him, a federal court may excuse a procedural

2   default.  *See*, *Schlup v. Delo*,  513 U.S. 298, 299 (1995); *Noltie v. Peterson*,  9 F.3d 802, 806 (9th

3   Cir.1993).

4          In opposing the state's motion to dismiss, the petitioner presented a number of

5   affidavits and other documents which supported his claim that the then eight-year old victim of his

6   alleged crimes has recanted her trial testimony.  The evidence also demonstrates that Jennifer had

7   good reason to later stick to her story of abuse, because she was afraid of her mother and of the

8   possibility that Karen would come back to take her from her grandparents.  Hays provided evidence

9   that his former wife, Karen, admitted to police and under oath that she had coached Jennifer to bring

10  the charges against her husband in an effort to separate from him and retain custody of the children.[2]

11         Thus, although certain of his claims were procedurally defaulted in state court and

12  Hays was unable to demonstrate cause for his failure to meet the procedural requirements of the state

13  courts, the default was forgiven based on his preliminary evidence demonstrating to this court that he

14  is actually innocent of the charges against him.

15         At the evidentiary hearing granted to develop the facts to support his underlying

16  constitutional claims, Hays most thoroughly demonstrated his actual, factual innocence.  Were this

17  contention of actual innocence the only claim made and supported by Hays, he would be ineligible

18  for relief from this court.  *See Herrera v. Collins,* 506 U.S. 390, 404 (1993).  However, the state

19  courts' handling of his claims, together with the evidence brought forth at the evidentiary hearing

20  clearly and convincingly demonstrates, not only is Hays innocent of the charges against him, but that

21  his criminal prosecution was wrought with constitutional violations so egregious, resulting in

22

23  _____

24      [2] Ultimately, Karen did not retain custody of the children.  In fact, Karen was suspected of
    criminal neglect of her children, and they were initially placed with child protective services.  Shortly
    afterward, the children were given over to the custody of their paternal grandparents. According to her

25  own testimony, Karen made little effort to contact the children or to regain custody, as it was just too
    much trouble.  *See* Transcript of Evidentiary Hearing (docket #76), pp. 63-66, 78-79.

26

1   consequences so grave, and incarceration so lengthy, that Mr. Hays is entitled to immediate and

2   unconditional release.  *See*

3   *Bowen v. Maynard,* 799 F.2d 593, 614 and n.12 (10th Cir.) *cert. denied,* 479 U.S. 962 (1986);

4   *Gardner v. Pitchess,* 731 F.2d 637, 640 (9th Cir. 1984).

5         III.     <u>Findings and Conclusions</u>

6             In his Amended Petition, Hays raises eight claims:

| Ground 1: | Hays contends that there was insufficient evidence to sustain the jury's findings of guilty, denying him due process guaranteed by the Fifth and Fourteenth Amendments. |
|---|---|
| Ground 2: | The trial court erred in denying Hays's motion for a new trial, denying due process. |
| Ground 3: | Hays's due process rights were denied and he was subjected to double jeopardy when the jury found him guilty of sexual assault and lewdness with a minor. |
| Ground 4: | Hays was denied due process and a fair trial due to prosecutorial misconduct. |

          a.    The prosecutor knowingly used perjured testimony of Karen Hays and Detective Jacobsen.
          b.    The prosecutor improperly denigrated defense witnesses.
          c.    The prosecutor improperly commented on Hays's incarceration.
          d.    The prosecutor improperly withheld exculpatory information and evidence from the defense.

| Ground 5: | Hays was denied effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments. |
|---|---|

          a.    Counsel failed to seek an evidentiary hearing at the first motion for a new trial.
          b.    Counsel failed to obtain psychological and physical examinations of the victim.
          c.    Counsel failed to utilize any experts.
          d.    Counsel failed to move for a mistrial when Detective Jacobsen stated that Hays had confessed, which was untrue.
          e.    Counsel was unprepared and highly ineffective in closing arguments.
          f.    There existed an irreconcilable conflict of interest between Hays and his counsel.
          g.    Counsel failed to argue at sentencing.
          h.    Counsel failed to adequately cross-examine witnesses at trial, including: Rene Butts-McClymount and Donna Gosnell.
          i.    Counsel failed to object to prosecutorial misconduct which occurred during trial.

1    Ground 6:      Hays was denied effective assistance of appellate counsel.

2    Ground 7:      The reasonable doubt jury instruction given at Hays's trial violated the due
                    process and fair trial requirements of the Fifth and Fourteenth Amendments.
3
     Ground 8:      Cumulative error at trial and on appeal denied due process and a fair trial in
4                   violation of the guarantees of the Fifth and Fourteenth Amendments.

5    *See* First Amended Petition (docket #23).

6                        **Insufficient Evidence - Actual Innocence**

7           A claim that the evidence was insufficient to support the guilty verdict must be

8    evaluated under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 307 (1979), which

9    requires viewing the evidence in the light most favorable to the prosecution and determining that no

10   rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

11          This claim was presented to the Nevada Supreme Court on direct appeal.  Exhibit 24.[3]

12   In that order, the Nevada court held that there was substantial evidence to support his conviction,

13   including the testimony of Jennifer, the medical evidence, and expert testimony.  Exhibit 36.  The

14   court noted that this evidence, including the "lurid details" provided by Jennifer,  would allowed a

15   "reasonable jury" to be "convinced to the degree of certitude necessary to convict Hays of all counsel

16   of criminal sexual conduct." *Id.*

17          Were these findings of fact objectively  reasonable, the state court's decision would

18   be entitled to great deference from this court.  However, the findings were not reasonable.  First,

19   Jennifer's testimony at trial was not full of lurid or graphic details.  *See e.g.* Exhibit 97, pp. 33-44.  In

20   fact, Jennifer's testimony was derived almost completely from leading questions offered by the

21   prosecutor and her testimony was without independent details as to times or places or even particular

22   _____

23          [3] The exhibits referenced in this Order were submitted by both respondents and by Hays.  They
     are, however, numbered in order from 1 to 124.  The are found in the court's record as follows: Exhibits
24   1-90 are located at docket entry 11 in CV-N-99-0491-DWH-RAM (Hays I); exhibits 91-124 are located
     at docket entries 24 and 25 in this action 3:04-cv-011-RLH-VPC (Hays II).  Additionally, there were
25   exhibits admitted into the record during the evidentiary hearing conducted on October 19, 2006 and
     March 6, 2007.  These exhibits are numerical from 1-53 and are identified as "Evid. Exhibit."

26

events.  She did not identify any specific days when the alleged incidents occurred only testifying that it happened more than once.  *Id.*  Jennifer could not peg the alleged instances of abuse to any more memorable dates, such as a holiday or special occasion.

Under Nevada law, a conviction for sexual assault may not rightly be obtained unless the victim testifies with "some particularity regarding the incident.... There must be some indicia that the number of acts charged actually occurred." *LaPierre v. State,* 108 Nev. 528, 531, 836 P.2d 56 (1992).  Because Jennifer did not testify particularly about any one act of lewdness or sexual assault, let alone eight, the finding of guilt is unreliable.

Second, Jennifer recanted her testimony immediately after trial and before sentencing occurred.  Exhibit 9, Motion for New Trial; Affidavits of Virginia Russo, Anthony Russo, and Jennifer Russo.  This recantation was discounted by the state court solely on the basis of a written statement by Jennifer's social worker claiming that Jennifer had recanted her recantation. Exhibit 10, Opposition to Motion for New Trial, affidavit of Donna Gosnell.  Prior to denying the motion, the court did not speak with Jennifer or conduct an evidentiary hearing wherein Jennifer, her grandparents, or Ms. Gosnell could be cross-examined about the statements made in their affidavits. *See* Exhibit 11.

Jennifer's recantation at the time of the original motion has since been reiterated by her in written form at least five times.  *See* Exhibit 125.  Moreover, Jennifer, Virginia Russo and Donna Gosnell all appeared at the evidentiary hearing conducted on this petition and testified on the subject of the recantation.  Jennifer offered clear and credible testimony about the events.[4]  Her recollection was good and her testimony was strong: Robert Hays did not sexually abuse her;  Hays

---

[4] Prior to her testimony at the evidentiary hearing on October 19, 2006, Jennifer was evaluated by David Schmidt, Ph. D. to establish her mental and intellectual functioning. The psychologist found Jennifer to be without psychological conditions and made no mental health diagnosis related to primary psychological or personality disorders.  *See generally,* Transcript of Evidentiary Hearing (docket #76), p. 12-17.  The psychologist testified that Jennifer presented as a normal, functioning young adult, although one that has suffered difficulties which she found difficult to address.

never touched her in any sexual way.  Evidentiary Hearing Transcript (E.T.),  p. 21.  Jennifer further testified that her mother, Karen, had coached and threatened her to accuse Hays of the sexual abuse. *Id.* at 25-26.  Jennifer, just eight at the time, had been physically and emotionally abused by her mother and was afraid that telling the truth or refusing to lie would anger Karen and lead to more trouble for Jennifer. *Id.*  In fact, Jennifer testified that her mother threatened to kill her and her siblings if Jennifer refused to cooperate with the accusations against her dad.  *Id.*

Jennifer further explained that she had wanted to tell to her grandparents and her aunt the truth before the trial, but they had been warned by police and social services that they could not discuss the case with her and, as a result, they would not listen.  E.T., p. 20;  *see also,* p. 132.  Additionally, Jennifer testified that when she met with the prosecutor, Mr. Moreo, before trial, she denied that her father had touched her.  In response, Moreo "got hostile" and "real upset" and advised her, "if you don't do what you're supposed to do, I'm going to take matters into my own hands," which Jennifer took to mean "give her back to Karen." *Id.*, pp. 28-29.

Third, there was evidence at trial that Karen had coerced and coached Jennifer to make the allegations against Hays so that she could get out of the marriage.  Exhibit 97, pp. 146, 149.  At trial, Karen admitted that she was involved in an intimate relationship with another man and was pregnant with that man's baby. *Id.* at 161.  There was evidence that Karen had written a letter to a friend wherein she stated she knew of someone who would kill Hays for $100. *Id.* at 145, 155.  Additionally, Karen admitted during the trial that she had previously testified under oath at a contested custody hearing in the family court that she had told Jennifer to lie and make up the sexual abuse allegations against her father. *Id.* at 147; *see also,* Evid. Exhibit 41.  At that hearing, Karen testified that she had told Jennifer

> to say that her father was doing things to her, touching her, licking her, putting her mouth on his private.  I put it into her head that she was - that they all would get taken away if we don't try to do something to stop them.  And I tried to convince her that this was the only way.

9

1   Exhibit 127, p. 54. Karen testified she provided Jennifer with the appropriate time frame.  *Id.*

2              Fourth, the medical evidence offered at trial, including the testimony of the examining

3   nurse has since been proved unreliable.  While at trial the nurse who examined Jennifer for signs of

4   sexual assault testified that it was the worst case of assault she had ever observed, both the State's

5   and petitioner's expert witnesses at the evidentiary hearing opined that the photographs taken of

6   Jennifer at the time of the events presented a completely normal genital exam.  Both experts

7   concluded that there was no physical evidence of sexual penetration and that the nurse's trial

8   testimony was in no way supported by the photographs.

9              All of the above supports the claim of insufficient evidence to convict based on actual

10  innocence.  "To be credible, [an actual innocence] claim requires petitioner to support his allegations

11  of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence,

12  trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial."

13  *Schlup*, 513 U.S. at 324; *Griffin v. Johnson*  350 F.3d 956, 961 (9th Cir.2003).  The court finds

14  specifically, that the new medical testimony presented at the evidentiary hearing by both Dr. Joyce

15  Adams on behalf of Hays, and by Dr. Neha Mehta, on behalf of the State, is new reliable evidence

16  not presented at trial.  That evidence, along with the testimony of Jennifer Hays that her father did

17  not sexually assault her in any way, would "'probably [have] produce[d] an acquittal,'" *Harris v.*

18  *Vasquez*, 949 F.2d 1497, 1523 (9th Cir.1990) (inner quotation omitted), cert. denied, 503 U.S. 910

19  (1992), had it been heard by the jury.

20             Ground One is meritorious.  The state court's finding of fact were objectively

21  unreasonable and the newly presented evidence completely undermines the validity of Hays's

22  conviction.

23             **Due Process Violated in Denial of New Trial - Actual Innocence**

24             Hays next claims that his right to due process was violated by the courts' repeated

25  denial of his motions for new trial, particularly in light of Jennifer's recantation and her statements

26

1   that her mother insisted that she make the allegations and coached her on the particulars of what she

2   should report.

3            Hays, who has been adamant and steadfast in his denial of guilt, sought a new trial

4   based upon newly discovered evidence. *See* Exhibits 9, 48, 52, 53. The new evidence presented to

5   the trial court included  Jennifer's affidavits which showed that she had been coached and perceived

6   threats from the prosecutor and the investigating detective if she refused to take the stand and testify

7   that her dad had abused her.   Her affidavits, which were presented to the trial court with Hays's

8   motions for new trial, raised serious questions about the validity and veracity of her testimony. The

9   affidavits also cast doubt upon the integrity of the prosecution in the matter.

10            In reviewing a motion for a new trial federal courts have identified the following

11   considerations:

12       (1)     It must appear from the motion that the evidence relied on is, in fact, newly discovered, i.e., discovered after the trial;

13       (2)     The motion must allege facts from which the court may infer diligence on the part of the movant;

14       (3)     The evidence relied on must not be merely cumulative or impeaching;
    (4)     The evidence must be material to the issues involved; and

15       (5)     The evidence must be such as, on a new trial, would probably produce an acquittal.

16   *See United States v. Krasney,* 607 F.2d 840, 843 (9th Cir. 1979).

17            Nevada courts have been advised to consider the following, similar factors:

18       1.     The trial court's satisfaction that the trial testimony of a material witness was false.
    2.     The evidence showing the false testimony was introduced at trial is newly discovered.

19       3.     The evidence could not have been discovered and produced at trial even with the exercise of reasonable diligence.

20       4.     It is probable that had the false testimony not been admitted, a different result would have occurred at trial.

21

22   *Callier v.Warden,* 111 Nev. 976, 993, 901 .2d 619 (1995).  In denying Hays's motions, the state

23   courts initially relied on the affidavit of Jennifer's court appointed counselor, Gosnell, who indicated

24   Jennifer had recanted her recantation. Exhibit 11. At no time did the court interview Jennifer or

25   allow counsel to question her about her recantation.  In subsequent denials, the court relied upon law

26

11

1   of the case.  None of these decision considered or evaluated the factors the law requires.  Thus, the

2   decision was not a reasonable application of law, federal or otherwise.

3          Hays was entitled to a new trial based upon the newly discovered evidence that

4   Jennifer had been coerced and coached into her testimony.  Short of that he was entitled to an

5   evidentiary hearing on his motion for new trial in order to present his new evidence and attempt to

6   rebut the opposition.  Ground two warrants relief.

7                          **Double Jeopardy**

8          Hays claims that he was subjected to double jeopardy in violation of the United States

9   Constitution when he was convicted of four counts of sexual assault and four counts of lewdness

10  based on the non-specific evidence adduced at trial.

11         This claim was denied by the Nevada Supreme Court without analysis.  Exhibit 36.

12  In that decision, the court merely concluded that the evidence produced at trial supported claims that

13  Jennifer "had been sexually assaulted by her father numerous times."  *Id.*  If there is no analysis of

14  the decision, there is nothing to which this court can defer.  *See Greene v. Lambert,* 288 F.3d 1081,

15  1088-89 (9th Cir. 2001). Accordingly, this court conducted an independent review of the record to

16  determine whether the state court clearly erred in its application of Supreme Court law.  *Delgado v.*

17  *Lewis,* 223 F.3d 976, 982 (9th Cir. 2000).

18         A criminal information is deficient unless it properly apprises the defendant of what

19  he must be prepared to defend against.  *Russell v. United States,* 369 U.S. 749, 763 (1962).  The

20  Information's general allegations that eight criminal acts occurred between August 1991 and June

21  1992 were not supported by evidence adduced at trial.   *See* Exhibit 2.

22         The purpose of the Double Jeopardy Clause is to ensure that a criminal defendant is

23  not subjected to prosecution and punishment more than a single time for any single offense. *Breed v.*

24  *Jones,*  421 U.S. 519, 530 (1975).  Thus, a person cannot be convicted of sexual assault and of

25  lewdness for the same, single criminal act.  Hays contends that is what happened to him.

26

1          At trial, Jennifer could not testify specifically as to the times or places that each

2  separate alleged assault occurred.  She did not recall specific dates and could not even set a time

3  frame for any specific occurrence.  In fact, Jennifer testified that the events occurred only while her

4  mother was at work and the evidence produced showed that Karen did not work outside the home

5  from early September 1991 until April of 1992.   The State's charge that the events occurred before

6  that time, starting in August 1991, was not supported by the evidence.  Jennifer did not clearly and

7  specifically testify about four separate sexual penetrations and four additional lewd acts.  As a result,

8  the guilty verdicts on all eight counts could only have been the result of the jury finding Hays guilty

9  more than one crime for a single alleged act.  On the record before this court, it is impossible to

10  ascertain which allegations support which conviction and it is impossible to identify eight separate

11  alleged incidents.  This claim is meritorious.

12                     **Prosecutorial Misconduct**

13          Hays claims that he was denied due process and a fair trial because of the misconduct

14  of the state's prosecutor, Tom Moreo.  Specifically, Hays claims that the prosecutor knew of Karen's

15  recantation, but presented her false testimony at trial anyway; that he knew Detective Jacobsen's

16  testimony that Hays had confessed was false, but presented it as though it were true; that he

17  improperly denigrated defense witnesses; commented improperly on Hays's incarceration, and

18  improperly withheld exculpatory evidence, including Jennifer's recantation.

19          The relevant question in determining a claim of prosecutorial misconduct is whether

20  the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a

21  denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) quoting *Donnelly v.*

22  *DeChristoforo*, 416 U.S. 637 (1974). Where prosecutorial misconduct violates federal constitutional

23  rights, reversal is warranted unless the misconduct was harmless beyond a reasonable doubt. *See*

24  *Chapman v. California*, 386 U.S. 18, 24 (1967).  Reversal is warranted only if it is "more probable

25

26

than not that the prosecutor's misconduct materially affected the verdict." *United States v. Sanchez*, 176 F.3d 1214, 1225 (9th Cir.1999).

### (a) Use of False Testimony - Karen Hays

The use of false testimony by the prosecutor, whether known at the time it is offered or uncorrected after it is discovered violates the Fourteenth Amendment. *Napue v. People of State of Ill.*, 360 U.S. 264 (1959) *citing, Mooney v. Holohan,* 294 U.S. 103 (1935); *Pyle v. State, of Kansas,* 317 U.S. 213 (1942); *see also Alcorta v. State of Texas,* 355 U.S. 28 (1957).

Prior to trial, on July 17, 1992, Karen went to the office of Child Protective Services Officer Sharen Adams and told Adams that she had put Jennifer up to say that Hays had sexually assaulted her and that she had taught Jennifer what to say in making the allegations. *See* Exhibit 127, 128, *see also* Exhibit 98, pp. 202. Adams made a report of this conversation and filed it with the juvenile court. Exhibit 128. The report indicated that "steps were initiated to charge Mrs. Hays with criminal child neglect, but these charges were not pursued beyond the District Attorney's office." *Id.* at 3. A month later, Karen testified under oath in a Juvenile Court proceeding. She stated:

> I told her to say her father was doing things to her, touching her, licking her, putting her mouth on his private. Put it into her head that she was – that they all would get taken away if we don't try to do something to stop them. And I tried to convince her that this was the only way.

Exhibit 97 at 164.

Finally, a report written by the police investigator, Detective Jacobsen clearly states:

> Karen Hays has changed her original story about the alleged sexual abuse of her daughter Jennifer by her husband Robert Hays. Karen Hays claims and contends that she coached Jennifer Hays for approximately two weeks to make the allegations against her father.

Exhibit 130. The prosecutor was also advised by the detective of a letter written by Karen regarding the situation and her willingness to pay $100 to have Hays killed. The detective's report reads:

14

1

> I contacted Deputy District Attorney Tom Moreo and advised him
> of this newest development in the case and reviewed this case with
> him.  Mr. Moreo denied prosecution of this case of contract murder
> as his opinion was that there was insufficient evidence to charge
> Mrs. Hays with that crime.

2

3

4 *Id.*  Notably, during his deposition given in lieu of appearing at the evidentiary hearing, Moreo

5 admits the existence of Jacobsen's report, but claimed no independent recollection of the recantation.

6 *See* Evid. Exhibit 52.  He asserted that the juvenile court proceedings and referral of charges against

7 Karen might never have come to his attention.  *Id.*

8       The existence of Adam's report, Detective Jacobsen's report, and Karen's testimony

9 in the record demonstrates that the district attorney's office knew of Karen's statements and knew

10 her testimony at trial was false.  Yet, at trial the prosecutor presented Karen's testimony that the

11 events were true.  Moreo did not disclose to the jury that Karen had testified in earlier sworn

12 testimony that she was responsible for the allegations and she had coached and taught Jennifer what

13 to say, including the particulars of the sexual contacts to which Jennifer testified.  However, these

14 matter were covered by the defense during cross-examination.  Exhibit 97, pp. 147-149.

15       While the prosecutor had an obligation to provide the defense with exculpatory

16 information, Hays cannot show prejudice on this claim because he was aware of the false testimony

17 and brought it to light before the jury.  *United States v. Sanchez*, 176 F.3d at 1225.  As a result, the

18 court finds this improper behavior harmless and no relief is available on this claim.

19               *(b) Use of False Testimony - Detective Jacobsen*

20       Moreo also presented false testimony from Detective Jacobsen when he allowed the

21 witness to testify that Hays had confessed to the crimes during a telephone conversation.  Exhibit 98,

22 pp. 211-212.  In fact, Hays asserts that the audio tape of the telephone conversation reveals that Hays

23 did not confess to the sexual assault, but responded Detective Jacobsen's inquiry as to what charge

24 was made against him.  Exhibit 98, pp. 277-281; *see also* Exhibit 130 (Hays's testimony regarding

25 telephone call to police.)

26

1          Jacobsen testified at the evidentiary hearing in a condescending and obsequious

2   fashion.  His bias to the prosecution was clearly evident, his memory was faulty, and his testimony

3   was not credible.  Moreover, his testimony was frequently non-responsive to the questions posed or

4   his answers were given before the question was completed, clearly indicating to this court that he had

5   an agenda in his testimony.

6          Jacobsen confirmed that, despite Hays' "confession" to the crime of sexually

7   assaulting his daughter, Hays was not immediately arrested. Evid. Hrg. Trans., p. 101.  Jacobsen

8   testified that he wrote a report of his conversation with Hays, but did not obtain a transcript of the

9   dispatch tape to confirm the "confession." *Id.*  The court concludes that such a confession, if it was

10  in fact made, would be much more compelling evidence, if the tape recording of the confession was

11  available.  Additionally, Jacobsen's written report, which states, "The call taker, who identified

12  herself as Stacy, said that she had a subject on the other line who was identifying himself as Robert

13  Hays, and this subject had told her he wished to turn himself in for sexually assaulting his daughter,"

14  Evid. Exhibit 44, p. 1245, can easily be interpreted to mean that Hays wanted to turn himself in on

15  the charges - not that he was confessing to the crime.

16         Jacobsen's credibility was brought further into question by changes he made to

17  Jennifer's written interview statement, *see* Evid. Exhibit 20, and his unpersuasive testimony about

18  the circumstances of that change. Evid. Hrg. Trans., pp. 104-105  In that interview transcript,

19  Jacobsen changed Jennifer's statement to reflect that the last time her father had done "something

20  bad" to her was on June 13, not June 18th as Jennifer adamantly claimed. *Id.*  This fact is significant

21  because Hays was arrested on June 16th, two days prior to the time Jennifer claimed Hays had last

22  touched her inappropriately. *See* Evid. Exhibit 44.

23         Jacobsen's testimony at the evidentiary hearing did nothing to clear concerns about

24  his veracity at trial.  His written report is open to interpretation and the prosecutor's use of such

25  prejudicial testimony without independent confirmation is improper.  Although, since Hays took the

26

stand and was able to offer his explanation of the conversation, the court concludes that his testimony about Hays's confession could have materially affected the verdict." *United States v. Sanchez*, 176 F.3d at 1225.  Relief on this claim is warranted.

### *(c)  Prosecutor's Improper Denigration of Defense Witnesses*

During closing arguments, the prosecutor commented on the testimony of Virginia and Anthony Russo, stating factiously that he wanted to thank them for their truthful testimony. Exhibit 99, pp. 343-44.  A prosecutor may not properly inject his person beliefs into his argument, but he may express subjective disbelief in defense witnesses. *See United States v. Birges,* 723 F.2d 666, 672 (9th Cir.1984) ( "It is neither unusual nor improper for a prosecutor to voice doubt about the veracity of a defendant who has taken the stand.").  Although the attitude of the prosecutor seems inappropriate, his back-handed attack on these witnesses credibility does not rise to a due process violation.  This is not an instance of prosecutorial misconduct.

### *(d)  Improper Comment on Defendant's Incarceration*

Informing the jury that the defendant remained incarcerated while waiting for trial can undermine the presumption of innocence. *U.S. v. Washington*  462 F.3d 1124, 1136 -1137 (9th Cir. 2006).  However, if there is a relevant reason why the defendant's incarceration is mentioned, the reference may be permissible.  *Id.*, (defendant's incarceration would give alibi witness incentive to come forward as soon as possible).

While questioning Hays on cross-examination, the prosecutor asked him how many times the defendant and his mother had talked prior to trial.  Respondents assert that this line of questioning was an attempt to impeach Hays.  *See* Exhibit 98, pp. 297.  Hays had testified that he was not in contact with "any of them [his family] at the time" and counsel sought to rebut that contention.  Based on the line of questioning, the prosecutor was also attempting to show the jury that Hays had discussed the case with his mother, who was caring for Jennifer.  Hays denied that he spoke with his mother about the trial.

1    From the course of the questioning indicated above, the reference to Hays's

2 incarceration is gratuitous.  Although counsel may have been trying to show that Jennifer had no

3 present reason to fear Karen, because she had not spoke to the child in over five months, it was not

4 necessary to refer to Hays's presence in jail.  Exhibit 98, pp. 296-297.  Neither was reference to his

5 incarceration relevant to Hays's communication with his parents.  These comments were improper

6 and diminished Hays's presumption of innocence, which is not harmless error.

7                      *(e) Improper Withholding of Exculpatory Information/Evidence*

8    According to testimony, Jennifer tried to tell the prosecutor that the allegations

9 against her father were false before trial began.  The prosecutor did not forward this information to

10 the court or to the defense.

11    "When the 'reliability of a given witness may well be determinative of guilt or

12 innocence,' nondisclosure of evidence affecting credibility falls within th[e] general rule [of *Brady v.*

13 *U.S.*, 397 U.S. 742 (1970)]."  *Strickler v. Greene,* 527 U.S. 263, 280 (1999)*.*  This rule encompasses

14 evidence "known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S.

15 419, 437 (1995). Therefore compliance with *Brady*, requires that "the individual prosecutor learn of

16 any favorable evidence known to the others acting on the government's behalf in this case, including

17 the police." *Id.*

18    In her June 1994 Affidavit and her testimony at the evidentiary hearing, Jennifer tried

19 to tell the prosecutor that her father had not touched him improperly.  However, the prosecutor's

20 response was hostile and threatening, causing the eight year-old girl to stick to her story so she would

21 not be returned to the custody of the mother who hated and abused her.  *See* Evid. Hearing Transcript

22 (docket #76), pp. 28-29.

23    In her affidavit, Jennifer stated:

24    That on February 24, 1993, Mr. Moreo asked me, Did you father ever touched
      [sic] you, and I answered "NO".

25

26

1
2
3

My father Robert Hays never sexually abused me, I had to lie because Mr. Moreo threatened and scared me after I told him NO that my father never touched me.  Mr. Moreo never gave me a chance to tell him that my mother threatened to kill me and my bother and sisters if I did not tell everybody that my father sexually abused me....

4
5
6

"NO ONE" is threatening or forcing me and I am not just saying my father never sexually abused me just to get my father out of prison, I am saying my father never sexually abused me because he never sexually abused me.  I was threatened and scared not only of my mother but also by Mr. Moreo to say that my father sexually abused me when he never sexually abuse me.

7   Exhibit 125, Affidavit of February 2001.

8           At the evidentiary hearing, Jennifer, now twenty-three years old, testified that she had

9   not been abused by her father and that the statements she made in her various affidavits were true.

10   Jennifer's trial testimony was integral to the jury's finding of guilt.  Had she testified that Hays did

11   not assault her, a conviction would have been impossible.  The prosecutor's failure to provide the

12   defense and the court with information related to Jennifer's attempt to recant before trial was

13   improper and resulted in a violation of Hays's constitutional rights to due process and a fair trial.

14           Hays is entitled to relief from this court on his claims that the prosecutor used false

15   testimony, improperly commented on his status as an incarcerated person, and improperly withheld

16   exculpatory evidence material to the crimes charged.

17                          **Ineffective Assistance of Trial Counsel**

18           Hays next claims that he received ineffective assistance of counsel at trial.  In

19   *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970), the Supreme Court declared that "the right

20   to counsel is the right to the effective assistance of counsel."  In *Strickland v. Washington*, 466 U.S.

21   668 (1984), the Court established the standards by which claims of ineffective counsel are to be

22   measured.  The *Strickland* Court set out a two prong test; a petitioner claiming ineffective assistance

23   of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective

24   standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the

25   defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors,

26

19

1   the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.  In

2   reviewing these claims, the court must be highly deferential to counsel's performance, indulging a

3   presumption that "under the circumstances, the challenged action might be considered sound trial

4   strategy. *Bell v. Cone*, 535 U.S. 685, 698 (2002).

5         Hays claims that his court-appointed public defender was ineffective on several bases

6   including: counsel failed to seek an evidentiary hearing on the first motion for a new trial; counsel

7   failed to obtain psychological and physical examinations of the victim; counsel failed to utilize any

8   experts; counsel failed to move for a mistrial when Detective Jacobsen stated that Hays had

9   confessed, which was untrue; counsel was unprepared and highly ineffective in closing arguments;

10  there existed an irreconcilable conflict of interest between Hays and his counsel; counsel failed to

11  argue at sentencing; counsel failed to adequately cross-examine witnesses at trial, including: Rene

12  Butts-McClymount and Donna Gosnell; counsel failed to object to prosecutorial misconduct which

13  occurred during trial.

14        On these grounds for relief, this court is bound to give deference to the state courts'

15  determinations only as to the claim that counsel did not seek an evidentiary hearing on the original

16  motion for a new trial - Ground 5(a).  *See* 28 U.S.C. § 2254(d).  The remaining grounds for relief

17  were not considered by the state courts on their merits, but were denied on procedural grounds.

18  Thus, the court's review of those claims is *de novo*.  *See Pirtle v. Morgan,* 313 F.3d 1160, 1167 (9th

19  Cir. 2002).

20        Drew Christiansen, trial and appellate counsel for Hays, was deposed by the parties to

21  this action in lieu of appearing personally at the evidentiary hearing.  Evid. Exhibit 51.  He answered

22  questions addressing these various claims.  From that testimony it is clear that counsel was

23  ineffective in a number of ways and that his actions were not guided by tactical or strategic analysis

24  nor founded on well-reasoned determinations of how best to represent his client.  In fact, many of

25  counsel's failing were due more to the standard of practice prevalent at the public defenders' office

26

20

1   at the time or were the result of inexperience and lack of independent thought.  Such performance is

2   not reasonable when compared with "prevailing professional norms" of practice even in 1993, at the

3   time of trial.  Thus, Hays is entitled to relief on these claims as set forth more specifically below.

4   *See Wiggins v. Smith,* 539 U.S. 510, 522-23 (2003).

5                              *(a) Counsel failed to seek evidentiary hearing on first motion for new trial.*

6                  Immediately after trial, Jennifer approach her grandmother and recanted her trial

7   testimony.  *See* Exhibit 9.  This information was taken to Hays's trial counsel, who filed a motion for

8   a new trial.  *Id.*

9                  In its opposition and as the apparent basis for denial of the motion, the state produced

10  an affidavit of Donna Gossnell, the social worker who had been counseling Jennifer prior to trial.[5]

11  That affidavit was the only evidence against granting a new trial and it was apparently the evidence

12  upon which the court relied in denying the motion.  *See* Exhibit 11.

13                 This claim was examined by the Nevada Supreme Court on appeal from the denial of

14  Hays's state court post-conviction petition.  *See* Exhibit 89.  The court simply stated that petitioner

15  had "failed to demonstrate that he counsel's performance was unreasonable or that appellant was

16  prejudiced by counsel's performance."  *Id.,* p. 3.

17                 The federal court must give deference to the last reasoned decision of the state court.

18  However, if the decision is not reasoned or offers no analysis to which the federal court can defer,

19  such deference is not required. *Greene v. Lambert,* 288 F.3d 1081, 1088 -1089 (9th Cir.2002); *see*

20  *also Delgado v. Lewis,* 223 F.3d 976, 981-82 (9th Cir.2000)(where the state court gives no reasoned

21  explanation for its decision on a petitioner's federal claim, a review of the record is the only means

22  of deciding whether the state court's decision was objectively reasonable). Given this, the court has

23  reviewed the record and makes its determination on that basis.

24  _____

25      [5] Ms. Gossnell also appeared and testified at the evidentiary hearing.  However, her memory of events was not reliable and her testimony was not credible as a result.  For example, Gosnell did not recall that Jennifer had recanted at all - let alone recanted her recantation.

26

1       The trial court should have and could have been advised more fully of the

2 circumstances surrounding Jennifer's recantations to the prosecutor, to the detective, to the social

3 worker, and to her grandparents at an evidentiary hearing.  Moreover, the court could have and

4 should have questioned Jennifer directly about her recantation and her alleged recantation of the

5 recantation to the social worker.  These things did not occur because counsel for Hays did not request

6 an evidentiary hearing.

7       In his deposition, when asked about this fact, counsel stated that he was surprised

8 there was no evidentiary hearing conducted and shocked that the judge denied the motion for a new

9 trial.  Evid. Exhibit 51, p. 10.  Counsel further stated that he thought it was so obvious that it [the

10 new trial] should have been granted, that he surprised when it was denied.  *Id.* p. 12.  He admitted,

11 however, that he did not "push [for a hearing] per se," although he "thought it implicit within the

12 motion itself suggested that [the court] needed to hear from somebody" "hear from her."  *Id.*

13       These are not the statements of counsel who is zealously representing his client.

14 Neither are these the statements of a lawyer who has weighed the pros and cons of seeking an

15 evidentiary hearing and has concluded there are good reasons to allow the matter to be decided

16 without all the available evidence being presented.  Counsel was ineffective.

17               *(b) Counsel failed to obtain psychological and physical examinations of the victim or (c)  utilize any experts*.

18

19       When asked about the use of independent experts or obtaining an independent

20 examination of the alleged victim, counsel responded that "it was not common in the public

21 defenders office to use experts."  Evid. Exhibit 51, p. 13.  Counsel suggested this was also the case

22 for any request for an independent examination - claiming "if there was no motion to file, I didn't,

23 whether that was strategic or tactical, we normally did not do that." *Id.*  He stated that he had no

24 "specific recollection" of his decision-making. *Id.,* at 15.  Counsel also admitted that he did not

25

26

1   recall speaking to anyone, such as a doctor, to obtain information about sexual assault in preparation

2   for cross-examination. *Id.* at 16.

3           At the evidentiary hearing, Hays and the State presented their own medical experts

4   who reviewed the photographs taken of Jennifer's genitals after the time of the alleged assaults.

5   Both of these experts testified that the photographs presented a perfectly normal genital examination

6   for a nine year old female.  Both admitted that there was no evidence of repeated blunt force trauma

7   to the hymen or the genital or anal areas and that there was nothing in the photographs to suggest that

8   the victim's vaginal opening was anything other than of normal size and dimension.

9           Had Hays's defense been supported by an independent medical expert and had

10   counsel obtained and presented an independent medical opinion about the nature of the supposed

11   injuries seen by the nurse who did examine Jennifer and who testified at trial, Hays might well have

12   been acquitted.

13           Counsel failed to properly prepare for and investigate a defense. *Strickland,* 466 U.S.

14   at 691.  Counsel was ineffective in not obtaining and presenting independent expert testimony and

15   independent medical evidence. *Sanders v. Ratelle,* 21 F.3d 1446, 1456 (9th Cir. 1994).

16                *(d)*     *Counsel failed to move for a mistrial when Detective Jacobsen stated*

17                         *that Hays had confessed, which was untrue.*

18           Counsel knew that Hays had always and consistently denied the allegations of sexual

19   assault and that he had never confessed.  However, at the time that the State presented Detective

20   Jacobsen's testimony, wherein he declared unequivocally that Hays had confessed, counsel failed to

21   move for a mistrial.

22           To permit such a statement to be made before the jury by a police officer, vested in

23   the eyes of the jury with more than the average measure of honesty and integrity, could only result in

24   prejudice to the petitioner.  Counsel knew that his client had not confessed and had sought to turn

25   himself in to police "for molesting his daughter because he knew that those were the allegations, not

26

1    necessarily because he did it."   Evid. Exhibit 51, p. 18.    Counsel opined, however, that the court

2    would not have granted a mistrial, leaving the false impression to be addressed on cross-

3    examination.  *Id.*

4            From counsel's responses to the questions posed on this subject, it appears that

5    counsel made a strategic choice not to highlight the information by objection and to leave the matter

6    for clarification during Hays's testimony.  These facts do no present an instance of ineffective

7    assistance of counsel.

8                    *(e)       Counsel was unprepared and highly ineffective in closing arguments*.

9            Hays contends that counsel was highly ineffective at closing arguments due to his lack

10   of preparation.  In fact, counsel conceded his client's guilt, but suggested that the state had not

11   proven specifically which acts had occurred and when.  On rebuttal, the prosecutor reiterated this

12   concession and emphasized its damaging aspect by interjecting offensive images reasonably tied to

13   the concession.  *See* Exhibit 99, p. 372.

14           Counsel is charged with presenting argument to the jury about those weaknesses in

15   the state's case, or strengths in the defense that are material to the charges and that help the

16   defendant's position in relation to those charges.  *See Gentry v. Roe*, 320 F.d 891, 900 (9th Cir.

17   2003).  Here, counsel's arguments did nothing but invite repetition and reinforcement of the

18   repugnant allegations against Hays during the State's rebuttal argument.

19           Such argument could not have helped Hays in overcoming the charges made against

20   him.  Concession of guilt by your own counsel is damning and the prejudice is evident.

21                    *(f)       There existed an irreconcilable conflict of interest between Hays and
                                his counsel*.

22

23           During the course of his representation of Hays, an irreconcilable difference

24   developed in the form of a civil suit brought by Hays against counsel, Mr. Christiansen.  During his

25   deposition, counsel admitted that Hays had sued him and that he had filed a motion to withdraw.

26

                                            24

1    Evid. Exhibit 51, p. 5.  Counsel also admitted this caused their relationship to become "awkward"

2    and it, in fact, created a conflict.  *Id.* at 6.  The motion to withdraw was denied, however.  Counsel

3    opined that this denial might have been due to the judge's determination that, "he was not going to

4    let the defendants run his courtroom, and he found nothing wrong with my representation of Mr.

5    Hays apparently and saw no reason to take [counsel] off of the case."  *Id.*  The court did not express

6    these conclusions however, and did not conduct a hearing on the motion to ascertain from Hay the

7    existence or level of conflict between Hays and his counsel.  *See* Exhibit 1, p. 2.

8            The guarantee to effective assistance of counsel include a guarantee of counsel devoid

9    of any conflict of interest.  *Wood v. Georgia,* 450 U.S. 261, 271 (1981).   When such a conflict is

10   brought to the attention of the court, the court must "inquire into the attorney's potential conflict of

11   interest." *Campbell v. Rice,* 302 F.3d 892, 897 (9th Cir. 2002) citing *Holloway v. Arkansas,* 435 U.S.

12   475, 484 (1978).  Failure to do so violates the defendant's rights under the Sixth Amendment. *Id.*

13           In the case where a client has sued his counsel in another court during the course of

14   ongoing representation, a clear conflict of interest arises.  For example, counsel would be less

15   interested in protecting his client's interests, may not wish to expend the time necessary to do a

16   thorough investigation or prepare the best defense.  The record in this instance reflects such a result.

17   Petitioner was denied his right to the effective assistance of counsel due to the existence of a conflict

18   of interest.  Petitioner is entitled to relief.

19                   *(g)     Counsel failed to argue at sentencing.*

20           Hays asserts that counsel did not meet with him prior to sentencing, did not review

21   the pre-sentence investigation report with him, and did not prepare him for allocution.  At the

22   sentencing hearing, counsel failed to argue on behalf of his client.  In fact, counsel stated, "I have

23   nothing to say, your honor."  Such abandonment of his client at a point where counsel might do the

24   most good, is improper and denied Hays his Sixth Amendment rights.

25

26
                                        25

A criminal defendant is entitled to the effective assistance of counsel at all critical stages of the proceedings. *Iowa v. Tovar,* 51 U.S. 77, 80-81 (2004). The United States Supreme Court in *Strickland*, "expressly declined to 'consider the role of counsel in an ordinary sentencing, which ... may require a different approach to the definition of constitutionally effective assistance.'" *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir.) *cert denied,* ___ U.S. ___, 126 S.Ct. 442 (2005) (quoting *Strickland*, 466 U.S. at 686). The Court has held, however, that any amount of actual jail time has Sixth Amendment significance implicating the right to the effective assistance of counsel. *See Argersinger v. Hamlin*, 407 U.S. 25 (1972). Thus, sentencing for even non-capital offenses implicates the right to the effective assistance of counsel. *See e.g., Glover v. U.S.*, 531 U.S. 198 (2001).

During his deposition testimony, counsel was unable to recall exactly what he argued at sentencing, but surmised that he would have commented on the Presentence Investigation Report, pointed to the recantation, spoke about the defendants and then left it to the discretion of the court. Evid. Exhibit 51, p. 21. This recollection was inaccurate as neither counsel, nor his client spoke to the court on behalf of the defense. *See* Exhibit 1, p. 5. The Court Minutes reflect statement by the prosecutor, but none by defense counsel or defendant. Because respondents have not rebutted Hays's assertions that counsel completely abdicated his role as advocate at the sentencing stage, the facts asserted in the petition and supported, at least by omission of controverting evidence, may be accepted as true.

Counsel was ineffective at sentencing and Hays, who received eight extremely harsh consecutive sentences on his convictions–who was "hammer[ed]" by the judge, to quote his counsel–was prejudiced by that abandonment.

/ / /

/ / /

/ / /

1

         (h)      *Counsel failed to adequately cross-examine witnesses at trial,*
                          *including: Rene Butts-McClymount and Donna Gosnell*;

2

3         Hays next claims that counsel was ineffective in his cross-examination of the State's

4  witnesses at trial, particularly the social worker, Donna Gosnell, and the nurse practitioner

5  who conducted the sexual assault examination, Rene Butts-McClymount.

6         During trial, counsel cross-examined Rene Butts-McClymount with little vigor and

7  much deference.  He did not question her conclusion or their bases, merely enhancing the State's

8  evidence by reinforcement.  *See e.g.,* Exhibit 97, p. 103.

9         Neither did counsel challenge the conclusions or the expertise of Donna Gosnell who

10  opined that Jennifer had been sexually abused.  Counsel did not inquire about Gosnell's methods for

11  making such a determination and did not offer any challenge to her experience or her conclusions.

12  Testimony and exhibits derived from the evidentiary hearing conducted by this court unequivocally

13  shows that the medical opinions offered by Butt-McClymount were inaccurate and the methods and

14  conclusions of Gosnell were questionable.  *See e.g.* Exhibit 131.

15         Had counsel properly and thoroughly cross-examined these witnesses, their veracity

16  or expertise might well have been called into question and the outcome of the trial would likely have

17  been different.

18

         (i)      *Counsel failed to object to prosecutorial misconduct which occurred*
                          *during trial*.

19

20         Hays argues that counsel should have objected to the prosecutor's improper

21  inferences regarding Jennifer's testimony and demeanor.  He also claims the prosecutor improperly

22  shifted the burden of proof to the defense during closing arguments.

23         During closing arguments, the prosecutor suggested that Jennifer sat far back in her

24  chair in order to avoid looking at the man who had sexually abused her.  Exhibit 99, p. 329.

25

26

1    However, in her June 2002 affidavit, Jennifer attested that she seated herself as instructed by the

2    prosecutor.  *See* Exhibit 125, affidavit of June 2002.  Jennifer stated:

3              I asked the D.A. Thomas Moreo if I could look at my father when I
             took the witness stand, and he said no, that I better sit all the way
4              back in my chair, and don't even look at your father.  So I sat all
             the way back in my chair and I did not look at my father, until I
5              was asked what he was wearing, and after that I never again looked
             at him.

6

7    *Id.*  Hays argues that the prosecutor's motives in directing Jennifer to avoid looking at her father so

8    that he could later argue the point was "extremely deceitful" and improper.  This may be true.

9    However, to object to the comments on this basis would require defense counsel to possess

10   extraordinary clairvoyance, a useful skill, but not one frequently found even in the best of counsel.

11             Second, Hays claims counsel should have objected to the prosecutor's improper

12   burden shifting when he argued:

13             When she pointed a finger at that man, he is the one that did this
             to me, that presumption of innocence few out the window.  It
14             was like that protective bubble that was over him when he
             walked into this courtroom burst.

15

16   Exhibit 99, p. 329-30.  A criminal defendant is entitled to the presumption of innocence until such

17   time as the jury reaches a verdict finding guilt.  *Estelle v. Williams*  425 U.S. 501, 503 (1976); *In re*

18   *Winship,* 397 U.S. 358, 364 (1970).  Removing or minimizing that presumption in the eyes of the

19   jury is improper and highly prejudicial, denying the defendant a fair trial.  *See Coffin v. U.S.* 156 U.S.

20   432 (1895).  The prosecutor's arguments in this regard were improper and highly prejudicial.  Trial

21   counsel should have objected to the statements and sought a corrective instruction from the court.

22   *See Washington v. Hofbauer*, 228 F.3d 689, 709 (6th Cir. 2000); *United States v. Bess,* 593 F.2d 749,

23   754 (6th Cir. 1979).

24             Hays is entitled to relief on his claim that counsel was ineffective in failing to object

25   to the prosecutor's burden shifting during closing arguments.

26
                                                  28

1   **<u>Ineffective Assistance of Counsel on Appeal</u>**

2          Hays claims that counsel on appeal, the same counsel that represented him during

3   trial, was ineffective for failing to raise numerous viable claims on direct appeal.  To make out this

4   claim, Hays must demonstrate that appellate counsel's performance fell below an objective standard

5   of performance and but for counsel's actions, the omitted issue would have a reasonable probability

6   of success on appeal. *Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir.1992); *Heath v. Jones*, 941

7   F.2d 1126, 1132 (11th Cir. 1991).   Counsel need not raise every non-frivolous claim presented by

8   the client on appeal.  *Jones v. Barnes,* 463 U.S. 745, 751 (1983).  This holds true only if counsel uses

9   his professional judgment in the matter.  *Id.*

10          On appeal, counsel attacked only the sufficiency of the evidence and the denial of the

11   motion for new trial.  *See* Exhibit 24.  Hays contends that counsel never contacted him regarding the

12   appeal and that there was no communication whatsoever between them by that time. Hays himself

13   sought, and was granted, leave to file a supplemental brief, raising nine additional claims for relief,

14   including the claims of prosecutorial misconduct, double jeopardy, improper admission of

15   photographic evidence, and cumulative error.  Exhibit 28.  Those claims received little consideration

16   by the state high court.

17          Because this court has concluded that many of the claims argued to the state court by

18   Hays and again raised in this petition are, in fact, meritorious, petitioner has met his burden to show

19   prejudice.  Hays received ineffective assistance of counsel when counsel failed to present his claims

20   of actual innocence and  prosecutorial  misconduct on direct appeal.

21   **<u>The reasonable doubt jury instruction given at Hays's trial violated the due
     process and fair trial requirements of the Fifth and Fourteenth Amendments.</u>**

22

23          Hays complains that the reasonable doubt instruction offered to the jury violated his

24   constitutional rights.  He contends that the prosecutor's "redefinition" of the term exacerbated the

25

26

1   problem. He argues the definition "requires a higher standard for reasonable doubt than for proof

2   beyond a reasonable doubt" contradicting the Constitutional principles regarding the state's burden.

3          The Nevada reasonable doubt instruction has been found constitutional by the Ninth

4   Circuit Court of Appeals.  *See Ramirez v. Hatcher,* 136 F3d. 1209 (9th Cir. 1998).  Hays's arguments

5   are not novel on this claim and do not warrant relief under the current law of this circuit.

6
7          **Cumulative error at trial and on appeal denied due process and a fair trial in
           violation of the guarantees of the Fifth and Fourteenth Amendments.**

8          Hays claims he is entitled to relief on the basis of the cumulative effect of the errors

9   and omissions present in his criminal prosecution.

10         The cumulative error doctrine recognizes that the cumulative effect of several errors

11  may prejudice a defendant to the extent that his conviction must be overturned.  *See United States v.*

12  *Frederick,* 78 F.3d 1370, 1381 (9th Cir.1996).  The cumulative error doctrine, however, does *not*

13  permit the Court to consider the cumulative effect of *non-errors*.  *See Fuller v. Roe,* 182 F.3d 699,

14  704 (9th Cir. 1999), *overruled on other grounds*, *Slack v. McDaniel*, 529 U.S. 473 (2000)("where

15  there is no single constitutional error existing, nothing can accumulate to the level of a constitutional

16  violation").

17         Having found numerous constitutional errors in the proceedings, together with the

18  strong, clear and convincing evidence of Hays's actual innocence, the court finds that he has suffered

19  the effects of cumulative error and is entitled to relief on his petition.

20      IV.   Conclusion

21         Hays is actually innocent of the charges against him.  Were it possible, the court

22  would grant his petition on that basis alone.  However, that course of action is barred under the

23  AEDPA.  Nonetheless, aside from his innocence, Hays has demonstrated with clear and convincing

24  evidence that he is entitled to relief as a result of constitutional errors present in his criminal trial.

25  Hays was convicted on insufficient evidence.  His motions for a new trial on the basis of the victim's

26

1  recantation were improperly denied.  He was denied due process and a fair trial by the actions of the

2  prosecutor and the deficient performance of his own counsel.  He suffered convictions for a number

3  of crimes which were never shown to have occurred, violating the prohibition against double

4  jeopardy.  His appellate counsel, operating under a clear conflict of interest, failed to present viable,

5  even winnable claims on direct appeal.  Cumulatively, these errors resulted in Hays's improper and

6  unconstitutional conviction on four counts of sexual assault and four counts of lewdness with a

7  minor.

8          The court will grant the petition for writ of habeas corpus unconditionally.  Hays will

9  be granted his freedom.

10          **IT IS THEREFORE ORDERED** that the First Amended Petition for Writ of

11  Habeas Corpus (docket #23 ) is **GRANTED**.  **Petitioner shall be immediately released from**

12  **custody.**

13          **IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly.

14

15          Dated this ____22nd____ day of March, 2007.

16

17          _____

18          CHIEF UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

31